**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| URSZULA A PIERGALSKI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CATTLE DRIVE XPRESS, LLC, et al.,<br><br>Defendants. | CASE NO. 3:25-CV-730-DRL-SJF |

**OPINION AND ORDER**

This matter is before the Court on the Motion for Leave to File Third-Party Complaint/Crossclaim, filed by defendants Timothy Lammers and Two-Bit Acres, Inc. ("Two-Bit" and "Lammers"). [DE 37]. Two-Bit and Lammers seek leave to file a crossclaim against codefendant Cattle Drive Xpress, LLC ("Cattle Drive"). Cattle Drive responded, arguing Two-Bit and Lammers should be denied leave because their crossclaim would be futile. [DE 42]. Two-Bit and Lammers replied. [DE 43]. For the reasons below, Two-Bit and Lammers' motion is **DENIED**. [DE 37].

## I. Introduction

Based on the limited record available, the Court recounts the relevant facts to this motion. Plaintiffs Urszula and Brian Piergalski brought this negligence action, alleging Lammers negligently caused his semi-trailer to collide with Plaintiffs' vehicle while driving on a highway. [DE 16 at 2–7]. Plaintiffs claim Two-Bit and Cattle Drive are vicariously liable because Lammers allegedly caused the accident while acting within the scope of their employment. [*Id.* at 8].

Two-Bit is the owner of the semi-trailer in question. [DE 26 ¶ 30]. However, Two-Bit and Cattle Drive disagree for whom Lammers was acting as an agent. [*Compare* DE 17 ¶ 36; *with* DE 26 ¶ 36]. Two-Bit admits that Lammers was its employee generally, but contends he was acting as an agent of Cattle Drive during the accident. [DE 26 ¶ 37, 38]. Cattle Drive contends that neither Two-Bit or Lammers were its employees or agents. [DE 17 ¶ 36].

During discovery, Two-Bit isolated an Owner Operator Lease Agreement between Two-Bit and Cattle Drive. [DE 37 at ¶ 4]. Two-Bit contends the Owner Operator Lease Agreement (the "Lease Agreement") requires Cattle Drive to indemnify and defend Two-Bit and Lammers. [DE 37 at 3–6].

Under the Lease Agreement, Cattle Drive is the "Carrier" and Two-Bit is the "Owner Operator." [DE 38 at 7]. As Two-Bit recognizes, the Lease Agreement expressly delegates Two-Bit as the employer of the truck's operators and leaves Two-Bit as an independent contractor of Cattle Drive. [DE 38 at 13, 7]. The Lease Agreement also appears to require Two-Bit to defend, indemnify, and hold Cattle Drive harmless for any liabilities resulting from Two-Bit's employees or independent contractors. [*Id.* at 14, 7]. Two-Bit did not directly dispute the express language of the Lease Agreement. Instead, Two-Bit argues that the indemnification covenants are void under the Federal Motor Carrier Safety Regulations and that the same regulations require Cattle Drive to indemnify and defend Two-Bit and Lammers.

Two-Bit and Lammers' proposed crossclaim seeks a judgment: (1) declaring the federal regulations require Cattle Drive to indemnify and defend Two-Bit and

Lammers; (2) declaring the federal regulations invalidate any covenant requiring Two-Bit to indemnify and defend Cattle Drive; and (3) ordering Cattle Drive to indemnify and defend Two-Bit and Lammers. [DE 38 at 8–11]. Cattle Drive argues that the applicable federal regulations do not invalidate the contractual language. [DE 42 at 3].

## II. Legal Standard

The Federal Rules of Civil Procedure do not impose a time limit for filing crossclaims. Fed. R. Civ. P. 13(g); *Skevofilax v. Quigley*, 810 F.2d 378, 385–86 (3d Cir. 1987); *Fogel v. United Gas Imp. Co.*, 32 F.R.D. 202, 203–04 (E.D. Pa. 1963). Some jurisdictions allow for a highly discretionary standard, so "when a party seeks to file a crossclaim at an advanced stage of the case, the district court, in the exercise of its discretion, must determine whether to allow the crossclaim by balancing competing interests and harms against one another." *Sentinel Ins. Co. v. Walsh Constr. Co.*, 298 F. Supp. 3d 1165, 1179 (N.D. Ill. 2018) (citing 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1431 (3d ed. 1998) (April 2017 Update)).

But the Seventh Circuit has taken a different approach to permitting crossclaims. Absent an express crossclaim time limit, "once the parties have filed their initial pleadings, any motion to amend those pleadings and file a cross-claim" may only be granted under Federal Rule of Civil Procedure 15(a)(2). *Tragarz v. Keene Corp.*, 980 F.2d 411, 431 (7th Cir. 1992) (citing Fed. R. Civ. P. 15(a)). Rule 15(a) provides that leave to amend a pleading shall freely be given when justice so requires. However, "this right is not absolute and is appropriately denied when, among other reasons, the amendment would be futile." *Brunt v. Serv. Emps. Intern. Union*, 284 F.3d 715, 720 (7th Cir. 2002)

(citing *Wilson v. Am. Trans. Air, Inc.*, 874 F.2d 386, 392 (7th Cir. 1989)). A proposed crossclaim may be denied as futile when the pleading would not survive a motion to dismiss. *Brunt*, 284 F.3d at 720–21; *accord Gandhi v. Sitara Cap. Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013); *c.f. Wilson*, 874 F.2d at 392 (an amendment is futile if it would not survive a motion for summary judgment). When a proposed amended pleading is alleged to be legally futile, the court analyzes whether it fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Hunter v. Elanco Animal Health Inc.*, 187 F.4th 862, 873 (7th Cir. 2026). Thus, the Court accepts all factual allegations as true, drawing all reasonable inferences in favor of Two-Bit and Lammers. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

## III. Discussion

The Secretary of Transportation may regulate motor carrier transportation throughout the United States. 49 U.S.C. § 13301(a). Title 49 grants the Secretary with certain authority, which includes the authority to:

> require a motor carrier . . . that uses motor vehicles not owned by it to transport property under an arrangement with another party to . . . have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier.

49 U.S.C § 14102. Congruent with that rulemaking authority, the Secretary prescribes general leasing requirements on motor carriers. 49 C.F.R. § 376.1 (2016); 49 C.F.R. § 376.11 (2018). An authorized carrier may perform authorized transportation in equipment it does not own only if there is a written lease that meets the requirements of

Section 376.12. 49 C.F.R. § 376.11(a); *see also* 49 U.S.C. § 13102(23) (defining "transportation" broadly). A written lease, between an authorized carrier and the owner of the equipment, must provide that an "authorized carrier lessee" shall "have exclusive possession, control, and use of the equipment for the duration of the lease" and shall "assume complete responsibility for the operation of the equipment." 49 C.F.R. § 376.12(c)(1) (2018). One caveat is these regulations do not affect the relationship of the lessor and the lessor's driver as being either an independent contractor or employee of the lessee. *Id.* § 376.12(c)(4).

Some background may better illustrate the type of industry relationship to which these abstract regulations are aimed. Typically, a motor carrier is a person "providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). But Sections 376.11–12 allow a motor carrier to lease equipment from another carrier as needed, and even obtain a driver from the lessor. 49 C.F.R. § 376.2(f)–(g) (2016). Because authorized motor carriers may be limited to certain authorized routes or classes of freight, federal regulations prevent lessors and lessees from blending their operating authority through such leases. *Transamerican Freight Lines, Inc. v. Brada Miller Freight Sys. Inc.*, 423 U.S. 28, 35 (1975) ("*Transamerican*"). Put differently, the Secretary does not want the carrier-lessee to absorb the owner-lessor's operating authority through a lease loophole. To fix what had been a pattern of historical abuses, the regulations require the lessee to assume full control and responsibility of an operation. *Id.*; 49 C.F.R. § 376.12(c)(1). Thus, "the requirement that the lessee assume control and responsibility tends to assure that a

party directly responsible to the [Secretary] is in actual charge of the operation." *Transamerican*, 423 U.S. at 38.

With this backdrop in mind, and in dealing with nearly identical language in an antecedent to Section 376.12(c)(1), the Supreme Court held that indemnification clauses do not frustrate the regulatory lease requirements. *See id.* at 38, 29, 29 n.1.[1] Indemnification clauses that shift costs to the lessor do not affect the lessee's "basic responsibility to the public; [they affect] only the relationship between the lessee and the lessor." *Id.* at 39. As the federal regulations do not forbid indemnification for the lessee, the regulations do not necessarily void an indemnification covenant. *Id.* at 39–41. As the Court explained, "[a]lthough one party is required by law to have control and responsibility for conditions of the vehicle, and to bear the consequences of any negligence, the party responsible in law to the injured or damaged person may seek indemnity from the party responsible in fact." *Id.* at 40. Indeed, indemnification provisions produce "additional sources of funds for the one who is damaged or injured" and may increase operational safety. *Id.* at 41.

There may be limited scenarios where an indemnification covenant does become impermissible. Factors to be evaluated are: if the lessee absolves itself of its duties to the public and to shippers which are imposed by the regulations; if the indemnification clause is a factor showing an illegal blending of authority; or if the lessor was in control

---

[1] The regulation at issue in *Transamerican* mandated that "the two carriers [] first agree[] in writing that control and responsibility for the operation of the equipment shall be that of the lessee" and that "exclusive possession, control, and use of the equipment, and . . . the complete assumption of responsibility in respect thereto" be maintained by the lessee. *Id.* at 29 n.1 (citing 49 C.F.R. § 1057.3(a), (a)(4) (1975)).

of the service provided as well as the physical operation of the vehicle. *Id.* at 40–41. With this outline of the function and purpose of the Title 49 regulations, the Court turns to each proposed crossclaim.

**a. The Regulations Do Not Invalidate the Indemnity Covenants**

*Transamerican* forecloses the possibility that the Lease Agreement's indemnity covenants, standing alone, are invalid. As Two-Bit spotted in its reply, however, the Lease Agreement appears to not contain a provision providing that Cattle Drive have exclusive possession, control, and responsibility as required under Section 376.12(c)(1). Despite that, the absence of such a provision does not invalidate the Lease Agreement, nor the indemnity covenants it contains.

First, the indemnification covenants do not appear to be a factor showing an illegal blending of authority, and Two-Bit and Lammers make no argument of this kind. *Transamerican*, 423 U.S. at 40. Nor do Two-Bit and Lammers argue they actually controlled the service Cattle Drive provided as well as the operation of the vehicle. *Id.*

Second, the lack of a Section 376.12(c)(1) lease provision does not appear to absolve Cattle Drive of its duties to the public. For instance, the proposed crossclaim does not allege Cattle Drive refused to inspect the semi-trailer. *See* 49 U.S.C. § 14102(a)(3). It does not allege Cattle Drive abandoned any exercise of due care in operating the semi-trailer safely because of the lacking provision. Instead, Two-Bit and Lammers' argument is hinged to the idea that technical noncompliance invalidates the indemnity covenants. [*See* DE 38 at 7]. Without more, the Court is not convinced. Other jurisdictions have reasoned that carrier-lessees in noncompliant leases still assume the

requirement to maintain exclusive possession, control, and responsibility. *See Crane v. Penske Transp. Mgmt. LLC*, 184 F.4th 712, 714 (5th Cir. 2026) (discussing the applicability of oral leases under Section 376.11 despite its requirement for written leases). In kind, the "duties to inspect and insure the vehicles and to control and be responsible for their operation exist" regardless of whether a lease is written. *Puga v. About Tyme Transp., Inc.*, 227 F. Supp. 3d 760, 764 (S.D. Tex. 2017). The Fifth Circuit has plainly stated, "failure to comply with [federal motor carrier] regulations does not and should not insulate a carrier-lessee from liability." *Jackson v. O'Shields*, 101 F.3d 1083, 1089 (5th Cir. 1996). The weight of authority thus suggests that the regulations impose the duty of exclusive control and responsibility on Cattle Drive, regardless of the Lease Agreement's silence. Thus, overall the Lease Agreement's indemnity covenants are not accompanied by "other indicia" that Cattle Drive absolved itself of its regulatory duties. *Transamerican*, 423 U.S. at 40.

The authorities Two-Bit and Lammers cite in their reply do not overcome the Supreme Court's rationale in *Transamerican*. [DE 43 at 2]. Those out-of-circuit cases do not suggest that a motor carrier must always bear the ultimate financial costs, as those cases primarily deal with different regulations, insurance coverage, or otherwise predate *Transamerican*. None of their cited cites distinguish *Transamerican*, nor do they suggest Cattle Drive would avoid initial responsibility. *See Mellon Nat. Bank & Tr. Co. v. Sophie Lines, Inc.*, 289 F.2d 473, 476-77 (3d Cir. 1961) (not involving an indemnity covenant); *Wellman v. Liberty Mut. Ins. Co.*, 496 F.2d 131 (8th Cir. 1974) (discussing federal regulations' impact on distinct insurance issues); *Johnson v. S.O.S. Transp., Inc.*,

926 F.2d 516 (6th Cir. 1991) (reasoning that a vehicle operator is a "member of the public" to whom carrier-lessee owes duty of care after carrier-lessee's failure to meet safety requirements allegedly caused operator's death); *Empire Fire & Marine Ins. Co. v. Guar. Nat'l Ins. Co.*, 868 F.2d 357, 366 (10th Cir. 1989) (affirming parties' ability to allocate risk). With no countervailing authority, this Court remains bound to apply *Transamerican*; *see Occidental Fire & Cas. Co. v. Int'l Ins. Co.*, 804 F.2d 983, 986 (7th Cir. 1986) (citing *Transamerican* with approval).

Lastly, Two-Bit's reply resists the notion that the Lease Agreement's plain language requires Two-Bit to indemnify Cattle Drive. [DE 43 at 4]. This issue is not before the Court, however. Two-Bit and Lammers' proposed pleading claims Two-Bit is entitled to a judgment declaring the Lease Agreement's indemnity covenants are contrary to federal law. [DE 38 at 9]. But Two-Bits reply now argues the express indemnity covenants are not clearly enforceable under Indiana Law. [DE 43 at 4]. Arguments raised for the first time in a reply brief are waived. *Wolotka v. Sch. Town of Munster*, 399 F. Supp. 2d 885, 901 (N.D. Ind. 2005) (citing *River v. Com. Life Ins. Co.*, 160 F.3d 1164, 1173 (7th Cir. 1998)). First, Cattle Drive has not had the opportunity to address whether Indiana Law applies to the Lease Agreement. In fact, it appears the parties agreed that Iowa Law would apply. [DE 38 at 16]. Second, Two-Bit and Lammers have not raised state law validity in their proposed crossclaim. Thus, the Court takes no stance on the enforceability of Two-Bit's obligation to indemnify Cattle Drive under state law, because that issue is not raised in Two-Bit's motion or proposed crossclaim.

Two-Bit and Lammers' proposed crossclaim seeking a judgment declaring the Lease Agreement's indemnity covenants invalid under federal law would fail to state a legally sufficient claim. Fed. R. Civ. P. 12(b)(6). Thus, the proposed crossclaim would be futile. *Hunter*, 187 F.4th at 873.

**b. The Regulations Do Not Require Lessee-Lessor Indemnity**

Two-Bit and Lammer's claim that Cattle Drive is obligated to indemnify and defend them is legally insufficient. Title 49 and its accompanying regulations contain no provision requiring a carrier-lessee to indemnify the owner-lessor. Two-Bit and Lammers provide no authority showing that Title 49 may plant an indemnity covenant into a lease. Their argument that Cattle Drive was required to assume exclusive possession, control, and responsibility may be valid, but those regulatory duties have no connection to liability allocation.

Even attempting to draw reasonable inferences, their factual allegations do not raise a plausible claim for indemnification. The lease agreement establishes no duty for Cattle Drive to indemnify them, as it appears to require the opposite. Second, the referenced dispatch records and requests for admission do not mention indemnity, loss allocation, or reimbursement either.[2] [*See* DE 38 at 18–24]. No plausible inference can be made from this record that Cattle Drive is obligated to indemnify them. The proposed

---

[2] The court assumes for present purposes that the requests for admission are deemed admitted. However, nothing in this Order affects the parties' dispute surrounding these discovery requests. [*See* DE 35; DE 39; DE 40].

factual allegations fail to assert a right to relief beyond the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Factually and legally, the proposed crossclaim would fail to state a legally sufficient claim. Accordingly, Two-Bit and Lammers' claims for a declaratory judgment, along with an order enforcing that judgment, are futile.

## IV. CONCLUSION

Because the proposed crossclaim fails to state any legally sufficient claims, the filing would be futile. *Brunt*, 284 F.3d at 720–21; Fed. R. Civ. P. 15(a)(2). Justice does not require that leave be granted. Thus, the Court **DENIES** Two-Bit and Lammers' motion for leave to file. [DE 38].

**SO ORDERED** this 29th day of October 2026.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge